UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOHNNIE LEE THOMAS,

     Plaintiff,

v.                                  Case No.  6:11-cv-1231-Orl-TBS

COMMISSIONER OF SOCIAL SECURITY,

     Defendant.

_____

ORDER

     Plaintiff Johnnie Lee Thomas brings this action pursuant to the Social Security Act

("Act"), as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying his claim for

Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the

Act.  The parties consented to have this case referred to the Magistrate Judge and on

February 23, 2012, the District Judge entered his Order referring the case to me to conduct

all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. §

636(c) and Fed.R.Civ.P. 73.  (Doc. 18).  The Court has reviewed the record, including a

transcript of the proceedings before the administrative law judge ("ALJ"), the exhibits,

administrative record, and the pleadings and memoranda submitted by the parties.  For the

reasons that follow, the Commissioner's decision is due to be affirmed.

I. Background

     Mr. Thomas was born on August 11, 1957, he has a twelfth grade education and

worked as a cement finisher from 1980 to 2006.  (Tr. 29, 37).  On March 13, 2007, he went

to the emergency room at the Orlando Regional Healthcare Center complaining of low back

pain and numbness in his left leg.  (Tr. 199).  A lumbar MRI revealed mild to moderate diffuse osteophyte complex slightly asymmetric in the region of the left neural foramina stenosis and possible compression of the exiting right L4 nerve root and mild diffuse distal osteophyte complex with moderate facet arthropathy with moderate to severe bilateral neural foraminal narrowing contacting the exiting L5 nerve root.  (Tr. 202-203).  The doctors believed Mr. Thomas was suffering from "Spondylosis greatest at L4-L5 and L5-S1 due to both degenerative disc disease, as well as facet arthropathy."[1]  (Tr. 203).  The radiologist was "most concerned" with the "compression of the transient left L5 nerve root to a left lateral recess and neural foraminal disc bulge with annulear tear."  (Id.)  Mr. Thomas sought treatment for back pain at the Spine & Brain Neurosurgery Center and from board certified orthopedic surgeon, Geoffrey Stewart at The Spine & Scolosis Center (the "Spine Center").  (Tr. 188, 282-284).

On June 14, 2007, Mr. Thomas was struck and knocked to the ground by a slow moving car.  (Tr. 207).  Lumbar x-rays showed degenerative changes, but no acute fracture.  (Tr. 209-10).  The hospital doctor diagnosed "minor contusions" and discharged him in good condition (Tr. 208). Two weeks later, Dr. Stewart diagnosed a lower back soft tissue injury from the June accident "with resolution of symptoms to baseline."  (Tr. 278).  Dr Stewart believed Mr. Thomas could return to full duty work.  (Id.)

He went back to the Spine Center on July 24, 2007, complaining of low back and bilateral leg pain for the last five months.  (Tr. 276).  Dr. Javier A. Placer, M.D., who is board certified in pain, physical, and rehabilitation medicine, reviewed a prior lumbar MRI

---

[1]Spondylosis is "any of various degenerative diseases of the spine." <http://www.merriam-webster.com/medical/spondylosis>.

and concluded that it showed degenerative disc disease, facet joint degeneration, and spondylosis producing bilateral L4-S1 foraminal stenosis. (Tr. 277). Dr. Placer recommended epidural steroid injections and activity modification within comfort limits. (Id.)

Mr. Thomas received a series of epidural steroid injections on July 30, August 20, and September 10, 2007. (Tr. 272-275). Dr. Placer saw him on September 18, 2007, and noted that following the epidural steroid injections, "the patient has seen great relief in symptoms since the last visit" and had only "some mild residual discomfort." (Tr. 271). Dr. Placer felt Mr. Thomas could return to full duty without any restrictions and recommended home exercise. (Id.)

He went to his primary care doctor, Mara Tutus, M.D., for examination on October 1, 2007. (Tr. 222). Dr. Tutus diagnosed high blood pressure and diabetes mellitus. (Id.) Over the next few months, Dr. Tutus saw Mr. Thomas four times for check-ups, and on the last visit, opined that his hypertension was improved. (Tr. 220-24).

Mr. Thomas returned to the Spine Center on October 10, 2007, complaining of back and bilateral thigh pain. (Tr. 267). Dr. Stewart prescribed Neurontin for pain, ordered a lumbar MRI, and stated that Mr. Thomas could perform light duty work but that he should not lift objects weighing more than 25 pounds. (Tr. 267). The MRI was performed on October 22, 2007, and revealed broad-based disc osteophyte complex encroaching on the anterior subarachnoid space causing moderate right and mild left neural foraminal stenosis at L2-3; moderate canal stenosis at L2-3; large, broad-based disc osteophyte foraminal narrowing and moderate canal stenosis at L3-4; large disc osteophyte complex severely encroaching on the anterior subarachnoid space causing mild to moderate right and severe left neural foraminal narrowing with mass effect on the exiting left L4 nerve root at the L4-5;

a large disc osteophyte complex with central disc protrusion component and severe canal stenosis with contributions from degenerative posterior facet arthropathy at L5-S1.  (Tr. 265-266).

Mr Thomas said the epidural steroid injections had "helped him significantly," but his pain had recurred, and his employer did not have any light duty work available.  (Tr. 263).  Dr. Stewart found Mr. Thomas' October 2007 lumbar MRI was "unchanged from his prior MRI," and showed "multilevel degenerative lumbar spondylosis" and "disc protrusions at L4-L5 and L5-S1 with significant stenosis."  (Tr. 263, 265-66).  Dr. Stewart prescribed medication, recommended a booster epidural steroid injection and advised that Mr. Thomas could perform light duty work with no lifting over 25 pounds.  (Tr. 253).

In November, 2007, Dr. Stewart prescribed Neurtontin and Soma and referred Mr. Thomas for additional epidural steroid injections.  (Tr. 263).  Once again, Dr. Stewart expressed his opinion that Mr. Thomas should not lift objects weighing more than 25 pounds.  (Id.)

Mr. Thomas returned to the Spine Center in January 2008, complaining of increased low back and leg pain.  (Tr. 262).  Dr. Placer observed that "medications have been helping control the pain symptoms."  (Id.)  The doctor prescribed Neurontin, Ultram and Soma, and recommended a lumbar epidural steroid injection which was administered on February 4, 2008.  (Tr. 261-62). Three weeks later, Mr. Thomas reported "partial relief of his symptoms," and Dr. Placer noted that "medication helps to control the intensity of the symptoms."  (Tr. 260).  The doctor prescribed Neurontin and Soma, provided information about medial branch blocks, and advised Mr. Thomas to follow up with Dr. Stewart.  (Tr.

260).

On June 19, 2008, Mr. Thomas protectively applied for DIB and SSI, alleging

disability as of January 1, 2006.  (Tr. 104-08).  He subsequently amended his alleged

disability onset date to June 14, 2007.  (Tr. 28, 177).  Mr. Thomas claimed he became

disabled due to pain, back problems, and bilateral lower extremity weakness.  (Tr. 124,

147, 177).

The Commissioner referred Mr. Thomas to Dr. Alex C. Perdomo, M.D., for a one

time consultative examination that was performed on January 6, 2009.  (Tr. 239-240).  In

Dr. Perdomo's opinion, Mr. Thomas was "a pleasant, overweight male in no acute distress,"

who "walked down the hallway without any difficulties," and who sat "comfortably during the

exam and was able to get on and off the examining table without any problems."  (Tr. 239).

Dr. Perdomo concluded his report with the following recommendation:

> Patient could benefit from more aggressive physical therapy
> and home exercise program for back conditioning.  MRI of the
> lumbrosacral spine will be helpful for further evaluation.  He
> can stand, walk, and sit for four hours in an eight-hour
> workday and with normal breaks.  He can occasionally lift and
> carry, but should limit the weight of lifting to no more than
> twenty-five pounds.  He should also avoid repetitive bending,
> stooping, or crouching.  He did not require an assistive device
> for ambulation and no manipulative limitations were seen.  He
> needs adequate continuity of care for proper management of
> his other chronic disease.  He was made aware of his elevated
> blood pressure and encouraged to see a primary care provider
> for proper treatment.  (Emphasis supplied).

(Tr. 240).

On February 5, 2009, Mr. Thomas began treating with family physician Francoeur

Cadet, M.D., for back pain and a history of hypertension and diabetes mellitus.  (Tr. 242).

Dr. Cadet continued to treat Mr. Thomas for pain in his back, neck and left arm at least

through 2010.  (Tr. 244, 296-298, 311-329).

Non-examining state consultant, Minal Krishnamurthy, M.D., completed a Physical Residual Functional Capacity Assessment of Mr. Thomas on April 1, 2009.  (Tr. 249-57). Dr. Krishnamurthy opined that Mr. Thomas could lift 20 lbs occasionally, 10 lbs frequently, and that he could stand or walk (with normal breaks) for a total of 6 hours in an 8 hour workday.  (Tr. 251).

Mr. Thomas' applications for DIB and SSI were denied initially, on reconsideration, and by the ALJ following a hearing on November 10, 2010.  (Tr. 12-21, 46, 48, 50, 52).  On May 20, 2011, the Appeals Council denied his request for review.  Accordingly, the ALJ's decision is the Commissioner's final decision.  (Tr. 1-5); See 20 C.F.R. §§ 404.981, 416.1481, 422.210(a) (2012).  Mr. Thomas has exhausted all of his administrative remedies and timely filed this action.  The Court has jurisdiction pursuant to sections 205(g) and 1631(c)(3) of the Act, 42 U.S.C. §§ 405(g), 1383(c)(3).

## II. The ALJ's Decision

In determining whether an individual is disabled, the ALJ must follow the five-step sequential evaluation process established by the Commissioner and set forth in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4).  The ALJ must determine whether the claimant: (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy.  See Phillips v. Barnhart, 357 F.3d 1232, 1237- 1240 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four and,

at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.

5 (1987); Phillips, 357 F.3d at 1241 n.10.

The ALJ determined at step one that Mr. Thomas had not engaged in substantial

gainful activity since his June 14, 2007, amended onset date. (Tr. 14). At step two, the

ALJ found that Mr. Thomas suffered from the following severe impairments: hypertension,

diabetes mellitus, degenerative disc disease of the lumbar spine, and obesity. (Tr. 15). At

step three, the ALJ decided Mr. Thomas did not have an impairment or combination of

impairments that met or medically equaled one of the listed impairments in 20 CFR Part

404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926). (Tr. 15). The ALJ

also determined that Mr. Thomas had the residual functional capacity ("RFC"):

> . . . to perform light work as defined in 20 CFR 404.1567(b) and
> 416.967(b) except that the claimant is limited to standing and
> walking for 4 hours in an 8 hour workday for one hour at a time
> before needing the opportunity to alternate to a sitting position
> for approximately 10 minutes while on task; sitting for 6 hours
> in an 8 hour workday but if sitting for more than one hour, he
> must be given the opportunity to alternate to a standing
> position while on task; must never climb ladders, ropes, or
> scaffolds, or crawl; may occasionally climb stairs, stoop,
> crouch, and kneel; must avoid excessive vibration or work with
> dangerous moving machinery or exposure to unprotected
> heights.

(Id.) At step four, the ALJ found that Mr. Thomas was incapable of performing his past

relevant work. (Tr. 19). Then, at step five, after considering Mr. Thomas' age, education,

work experience, and RFC, the ALJ concluded that there were jobs that existed in

significant numbers in the national economy that Mr. Thomas could perform and therefore,

he was not disabled. ((Tr. 19-20).

### III. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the ALJ's findings are supported by substantial evidence.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004). The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla but less than a preponderance.  It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion."  Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted).

When the Commissioner's decision is supported by substantial evidence the district court will affirm even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision.  Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).  The district court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]"  Id.  "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision."  Foote, 67 F.3d 1533, 1560 (11th Cir. 1995) (per curiam); accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine the reasonableness of the factual findings).

### IV. Analysis

A.      Formulation of Mr. Thomas' RFC

A claimant's RFC is an assessment based upon all relevant evidence of his ability to work despite his impairments.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997),

citing 20 C.F.R. § 404.1545(a).  The claimant's RFC, along with his age, education and work experience, is considered in determining whether he can perform his past relevant work or some other work found in the national economy.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (citing 20 C.F.R. § 404.1520(f)).  Because the RFC is an administrative decision directing the outcome of disability, the ALJ considers medical source opinions, but the final responsibility for determining the claimant's RFC is reserved to the Commissioner. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); SSR 96-5p.  When substantial evidence supports the claimant's RFC, that RFC is entitled to deference on review.  Moore v. Barnhart, 405 F.3d 1208, 1231 (11th Cir. 2005).

The ALJ formulated an RFC limiting Mr. Thomas to modified light work.  Light work entails lifting no more than 20 pounds at a time with frequent lifting or carrying of no more than ten pounds.  20 C.F.R. § 404.1567(b).  Jobs that qualify as light work "also require a good deal of walking or standing, or involve sitting most of the time, with some pushing and pulling or arm or leg controls."  20 C.F.R. § 404.1567(a).

The ALJ found Dr. Perdomo's opinions "persuasive" and accorded them "considerable weight."  (Tr. 18).  Now, Mr. Thomas argues that the ALJ erred by omitting Dr. Perdomo's limitation that "[h]e can stand, walk, and sit for four hours in an eight-hour workday and with normal breaks" from his RFC.  Mr. Thomas interprets this sentence as a finding by Dr. Perdomo that he can only sit, stand and walk for a combined total of four hours in an eight-hour workday.  If Mr. Thomas' interpretation is correct, then he should be declared disabled because "[o]nly the ability to do full-time work will permit the ALJ to render a decision of not disabled."  Kelly v. Apfel, 185 F.3d 1211, 1214-15 (11th Cir. 1999), citing Social Security Ruling 96-8p (stating that the issue at step five is whether the

claimant has the residual functional capacity to perform work on a "regular and continuing basis" which means "8 hours a day, for 5 days a week, or an equivalent work schedule"). Alternatively, Mr. Thomas argues that if there is confusion about what Dr. Perdomo meant, the ALJ should have re-contacted the doctor and asked him to explain his recommendation.

The Court will not speculate about Dr. Perdomo's intent when he wrote his recommendation, or what the ALJ understood when she read the recommendation.  While Dr. Perdomo's statement is ambiguous, it can plausibly be read to be consistent with the RFC formulated by the ALJ.  The RFC is supported by Dr. Perdomo's other findings, including that Mr. Thomas exhibited normal coordination and station, normal sensory and motor strength and a full range of motion in his upper and lower extremities.  (Tr. 239-40). It is also supported by the fact that none of Mr. Thomas' treating doctors ever placed restrictions on him that exceed the limitations in his RFC.  This is substantial evidence to support the ALJ's decision.  See Falge v. Apfel, 150 F.3d 1320, 1324 (11th Cir. 1998) (upholding ALJ's decision where there were no medical restrictions inconsistent with the ALJ's RFC determination); Longworth v. Comm'r of Soc. Sec. Admin., 402 F.3d 591, 596 (6th Cir. 2005) (finding an absence of restrictions from the claimant's treating physician constituted substantial evidence supporting the ALJ's decision).  It follows that the ALJ was not required to re-contact Dr. Perdomo.

The ALJ wrote in her decision that "[a]n October 2007 MRI of the lumbar spine showed multilevel spondylosis most prominent at L4-F5 and L5-S1 (Exhibit 9F/9)."  (Tr. 17). Mr. Thomas claims error because the ALJ failed to discuss all of the results of the October 2007 MRI in her decision, and therefore, it is impossible to know whether the ALJ

-10-

considered all of the objective findings from the MRI.  He is also critical of the ALJ's failure to include the word "severe," which precedes "multi-level spondylosis" in the radiologist's report.

In Winschel v. Commissioner, 631 F.3d 1176, 1178-79 (11th Cir. 2011), the Eleventh Circuit held that when a doctor makes a statement reflecting judgments about the nature and severity of a claimant's impairments, including a claimant's symptoms, diagnosis and prognosis, what the claimant can do despite the impairments, and the claimant's physical and mental restrictions, the ALJ must state with particularity, the weight given to the opinion, and the reasons therefor.  Id.  Without this information, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" Id. (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981).  As long as the ALJ's decision "is not a broad rejection which is 'not enough to enable the [district court or the Eleventh Circuit] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole," the ALJ need not refer to every piece of evidence in the record.  Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (quoting Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995) (internal quotation omitted)).

The ALJ's failure to discuss all of the objective findings in the October 2007 MRI is not fatal in this case.  The ALJ did not ignore Mr. Thomas' back condition.  At step two of the sequential evaluation process, the ALJ held that Mr. Thomas was severely impaired by degenerative disc disease of the lumbar spine.  His treating physician, Dr. Stewart, who is a board certified orthopedic surgeon, reviewed the October 2007 MRI and concluded that Mr. Thomas' condition "was unchanged from his prior MRI" which was done before Mr.

Thomas alleged disability onset date.  (Tr. 202-03, 263, 265-66).  After examining the

October 2007 MRI, Dr. Stewart restricted Mr. Thomas from lifting more than 25 pounds,

which is consistent with the RFC the ALJ assigned.  The ALJ's  determination is also

supported by a lumbar x-ray taken in July 2010 which showed only "mild" and "moderate"

degenerative changes at L4-5 and L5-S1.  (Tr. 329).  This evidence satisfies the Court that

the ALJ considered the October 2007 MRI and that substantial evidence supports Mr.

Thomas' RFC.

B.      The Vocational Expert's ("VE") Testimony

        In reaching her decision, the ALJ relied on the testimony of a VE.  Before a VE's

testimony will "constitute substantial evidence, the ALJ must pose a hypothetical question

which comprises all of the claimant's impairments."  Jones v. Apfel, 190 F.3d 1224, 1229

(11th Cir. 1999).  The hypothetical question must comprehensively describe the claimant's

impairments.  Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985).  Mr. Thomas

contends that the hypothetical question the ALJ asked the VE was inadequate due to the

alleged errors the ALJ committed in formulating his RFC.  Because the Court rejected Mr.

Thomas' arguments concerning his RFC, this argument must fail.

C.      Determination of Mr. Thomas' Credibility

        Mr. Thomas has reported and described the pain he experiences including that it

made it hard for him to walk and he needed to use a cane. (Tr. 32-33).  Pain is evaluated

using the Eleventh Circuit's pain standard, which requires: (1) evidence of an underlying

medical condition and either; (2) objective medical evidence confirming the severity of the

alleged pain resulting from that condition; or (3) that the objectively determined medical

condition is of such a severity that it can reasonably be expected to cause the alleged pain.

Ortega v. Chater, 933 F.Supp. 1071, 1075-76 (S.D. Fla. 1996), (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). Once a claimant satisfies both prongs of the pain standard, "all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." Foote, 67 F.3d at 1561. The claimant's subjective testimony, together with medical evidence that satisfies the pain standard, is itself sufficient to support a finding of disability. Id. The ALJ found that Mr. Thomas has ". . . medically determinable impairments [that] could reasonably be expected to cause the alleged symptoms; however, [Mr. Thomas] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 16). Mr. Thomas objects to this boilerplate language which, apparently, is part of the Commissioner's template. The Seventh Circuit has criticized the Commissioner's use of this language on at least two occasions. Shauger v. Astrue, 675 F.3d 690, 696 (7th Cir. 2012); Bjornson v. Astrue, 671 F.3d 640, 644-46 (7th Cir. 2012). However, this is not an issue the Court must decide. The ALJ's finding is sufficient to satisfy the first and third elements of the pain standard. Geiger v. Apfel, No. 6:99-cv-12-orl-18B, 2000 WL 381920 *7 (M.D. Fla. Feb. 9, 2000).

When the ALJ discredits the claimant's testimony regarding his symptoms, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote, 67 F.3d at 1562 (quoting Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988)). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence. MacGregor v. Bowen,

786 F.2d 1050, 1054 (11th Cir. 1986). On the other hand, when credibility is critical to the outcome of the case the lack of an explicit credibility finding is grounds for remand. Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).

Mr. Thomas cites the decisions in Cannon v. Bowen, 858 F.2d at 1561-62 (11th Cir.1988), and MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986), both of which contain language to the effect that if the ALJ fails to articulate the reasons for discrediting a claimant's pain testimony then, as a matter of law, the testimony is accepted as true. But, there is an earlier line of Eleventh Circuit cases holding that when faced with an inadequate credibility determination, the appropriate remedy is to remand the case to the Commissioner for further consideration. Carpenter v. Astrue, No. 8:10-cv-290-T-TGW, 2011 WL 767652 *5 (M.D. Fla. Feb. 25, 2011) (citing Boyd v. Heckler, 704 F.2d 1207, 1211 (11th Cir. 1983); see also Smith v. Schweiker, 646 F.2d 1075, 1082-83 (5th Cir. 1981);[2] Lawton v. Commissioner, 431 F. App'x 830 (11th. Cir 2011).[3] These cases explain that under the prior precedent rule, the Eleventh Circuit is bound by the holding of the first panel to address an issue of law unless and until it is overruled by the Court, sitting en banc or the Supreme Court.

Mr. Thomas challenges the ALJ's finding that he was not entirely credible on the ground that the ALJ failed to make accurate and specific findings to support her credibility determination. The Court disagrees. The ALJ provided the following reasons why she discredited Mr. Thomas' testimony: (1) his treatment was conservative; (2) there was no

---

[2]The Eleventh Circuit is bound by Fifth Circuit precedent decided prior to October 1, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[3]Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. U.S.Ct. of App. 11th Cir. Rule 36-2.

evidence of persistent weakness or peripheral neuropathy; (3) there was only a one-time finding of 4/5 left upper extremity strength; (4) in 2007, Dr. Stewart opined that Mr. Thomas could return to work (Tr. 253); (5) Dr. Krishnamurthy opined that Mr. Thomas could occasionally lift 20 lbs and frequently lift 10 lbs (Tr. 251); (6) in January 2009, Dr. Perdomo observed Plaintiff walking without difficulty and the doctor felt that Mr. Thomas' back pain resulted in only "moderate musculoskeletal functional limitations" (Tr. 240); and (7) there is no record evidence that Mr. Thomas' condition is so severe that he cannot engage in any work activity.  This is substantial evidence to support the ALJ's credibility determination.

Lastly, in her decision, the ALJ stated that "the record lacks laboratory findings that are consistent with the severity the claimant alleges." (Tr. 19).  Mr. Thomas argues that this finding ignores most of the findings in the October 2007 lumbar MRI which he says, supports his self-reports of pain.  After reviewing the MRI, Dr. Stewart concluded that Mr. Thomas' condition was "unchanged from his prior MRI," (performed before his alleged onset date), and that Mr. Thomas could perform light duty work with no lifting over 25 pounds.  Accordingly, the ALJ properly applied the pain standard in this case.

Now, the Court finds Plaintiff has not demonstrated reversible error, the Commissioner's decision is AFFIRMED and the Clerk of Court shall enter judgment for the Commissioner pursuant to Sentence 4 of § 405(g) and close the file.

IT IS SO ORDERED.

DONE AND ORDERED in Orlando, Florida, on March 4, 2013.

THOMAS B. SMITH
United States Magistrate Judge

Copies to all Counsel